

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable James W. Strawn
County Attorney
Willacy County
Raymondville, Texas

Dear Sir:

Opinion No. 0-2646
Re: Under the facts given, what
is the legal status of a
political subdivision in
a county when such political
subdivision is dry as to all
liquors except vinous and
malt liquors that do not con-
tain alcohol in excess of
four per cent and the county
is wet as to fourteen per cent
beer and wine? What type of
license should be issued in
such precinct in case it is
held that any type of alco-
holic beverages may be sold?

Your letter of March 13, 1942, requesting the
opinion of this department on the questions set out above
is as follows:

"In connection with my question to you, which
has been numbered 0-4466 (William J. Fanning), I
would also like for you to answer this question:
'What is the legal status of a political subdivi-
sion in a county when said political subdivision
is dry as to all liquors except vinous and malt
liquors that do not contain alcohol in excess of
four (4%) per cent, and the county is wet as to
fourteen (14%) per cent beer and wine?' In the
political subdivision, a precinct, the voters, un-
der the local option law that existed prior to 1937,
voted 'for prohibiting the sale of all liquors,
except vinous and malt liquors that do not contain
alcohol in excess of four (4%) per cent by weight.'
This election naturally had the effect of prohibit-
ing all liquors higher than four (4%) per cent re-
gardless of the condition of the county. I am

unable to find any authority on this question, but it seems to me that it would be legal to sell beer and wine up to four (4%) per cent in the precinct. You will notice from my original question that the county voted dry as to four (4%) per cent beer, but later voted wet as to fourteen (14%) beer and wine. The precinct in question has never voted dry on either four (4%) per cent beer or fourteen (14%) per cent beer and wine.

"I am of the opinion that it is legal to sell beer and wine up to four (4%) per cent in the precinct. What type of license should be issued in said precinct in case you find that any type of alcoholic beverage may be sold?"

In the above quoted letter you refer us to a letter previously written by you to this department which letter was dated February 27, 1942, and contained inquiries which were answered in this department's opinion No. O-4466. It is necessary to consider both of these letters together in order to answer the questions contained in the above quoted letter, and since neither of your letters reveals the status of the county or of the precinct prior to the election that resulted in the legalization of the sale of vinous and malt liquors that do not contain alcohol in excess of four percent (4%) by weight, it would seem to be also necessary to indulge the presumption that the county containing the precinct was either wet at the time of the adoption of the prohibition amendment to the Constitution in 1919 or had since the adoption of the Constitutional amendment permitting local option, and before the election was held in this precinct voted wet to some extent permitted by law because unless the county itself was wet, a political subdivision thereof could not legally vote to permit the sale of any type of alcoholic beverage.

Beginning then with the presumption of the validity of the first election in the precinct, we now discuss your questions in a series of numbered steps in accordance with the varying condition of the county and precinct as to the sale of alcoholic beverages as described in both of your letters.

Honorable James W. Strawn, Page 3

1. "In the political subdivision, a precinct, the voters, under the local option law that existed prior to 1937, voted 'for prohibiting the sale of all liquors, except vinous and malt liquors that do not contain alcohol in excess of four (4%) per cent by weight'." (From your letter of March 13, 1942.)

This election obviously had the effect of permitting the sale of alcoholic beverages containing not more than four percent (4%) of alcohol by weight and of prohibiting the sale of any alcoholic beverages containing a percentage of alcohol greater than this amount. This is so clear that no citation of authorities are necessary on this point.

2. "In 1937 all alcoholic beverages were prohibited in the county". (From your letter of February 27, 1942.)

This election and the vote of the people of the entire county against the sale of all alcoholic beverages had the effect of prohibiting the sale of any alcoholic beverage regardless of the alcoholic content in the precinct in question and such prohibition would continue so long as the county as a whole remained dry and until the people of the whole county, that is the same political entity held an election and voted in favor of the sale of alcoholic beverages to some extent permitted by law. In support of this rule of law we cite Jackson v. State, 118 S. W. (2) 313, wherein it was held by the Court of Criminal Appeals of Texas that:

"Intoxicating liquors once having been voted out by voters of a political subdivision of a county can only be voted back by a majority vote of identical territory that had voted such liquors out."

and quoting from this case in the language of Judge Graves who wrote the opinion, we find:

"The county may force prohibition by vote over precincts which are not in favor of it, and so may a precinct over cities, towns, or subdivisions thereof that may not be in favor of it, but cannot force, by vote, repeal of it in any town, city or subdivision thereof."

Honorable James W. Strawn, Page 4

In the above quoted passage Judge Graves was himself quoting from an earlier opinion of Judge Hurt in the case of Aaron v. State, 29 S. W. 267, but Judge Graves made it clear that he adopted such language and the rule there stated and made it the opinion of the court in Jackson v. State, supra. To the same effect is the opinion of Judge Davidson in the case of Ex parte Pollard, 103 S. W. 878, and the Court of Civil Appeals case of Powell v. Smith, 90 S. W. (2) 942, in which it was held:

"Where local option was adopted in any given
locality, by the majority of the voters thereof,
it will remain in force until the qualified voters
of such particular subdivision decide otherwise
in an election held for that purpose."

Thus we see that the rule emerges which is now clearly the settled law of this State, that while a political subdivision of a county may be and remain dry even though the county as a whole votes wet in any of the degrees permitted by law, such political subdivision of the county may not be or remain wet when the county as a whole votes dry under local option.

Continuing with our analysis of the history of the various stages of wetness and dryness through which your county has passed as described by your letter we find:

3. "In 1938 four (4%) per cent beer was legalized within the county; later an election to legalize all alcoholic beverages failed to carry; in 1939 four (4%) per cent beer was legalized in the county." (From your letter of February 27, 1942.)

The question presented in this paragraph is did the precinct in question become wet as to four percent (4%) alcoholic beverages when the county as a whole voted wet in 1939 as to four percent (4%) alcoholic beverages? Under the rule laid down in the above cited cases we think that such precinct did become wet as to four percent (4%) alcoholic beverages when the county as a whole voted wet as to such beverages. The rule hereinabove quoted means that the voters of a whole county cannot enlarge or add to the wet status of a political subdivision of such county though they may take away or overrule its wet status. It is our opinion, therefore, that the precinct would return to the status voted by

Honorable James W. Strawn, Page 5

the people for that particular precinct at the last election held in the precinct for that purpose. The last election held in such precinct having resulted in the legalization of four percent (4%) alcoholic beverages and having in the meantime gone dry by a vote of the whole county, the precinct would return to a status permitting the sale of four percent (4%) alcoholic beverages when the county as a whole, at a subsequent election, voted to permit the sale of four percent (4%) alcoholic beverages.

4. "In 1941 four (4%) per cent beer was prohibited in the county." (From your letter of February 27, 1942.)

Now the precinct would again become dry under the rule of law set out, cited and discussed above.

5. "In 1942 the sale of fourteen (14%) per cent beer and wine was legalized." (From your letter of February 27, 1942.) ". . . The precinct in question has never voted dry on either four (4%) per cent beer or fourteen (14%) per cent beer and wine." (From your letter of March 13, 1942.)

We have now reached the present state in which we find that the county is wet as to fourteen percent (14%) beer and wine; what then is the present status of the precinct in question? We think that said precinct is wet only as to alcoholic beverages containing not more than four percent (4%) of alcohol by weight.

Under the state of facts given to us by you this precinct voted to be dry as to all alcoholic beverages except those containing more than four percent (4%) by weight and no other election either way has ever been held in such precinct since that time. By this election it became wet as to four percent (4%) alcoholic beverages and it became dry as to all alcoholic beverages containing more than four percent (4%) of alcohol. Clearly, under the rules enunciated hereinabove, if it had been wholly dry by a vote of the people of the precinct, it would have remained dry throughout all these vicissitudes of county elections, Jackson v. State, supra, Aaron v. State, supra, Ex parte Pollard, supra, Powell v. Smith, supra, and Houchins v. Plainos, 110 S. W. (2) 549. The county could change its wet status in favor of a dry one, but the county could not change its dry status in favor of a wet one. Such precinct was and is dry as to all liquors in excess of four percent (4%) of alcohol. Such precinct now remains dry as to all alcoholic beverages containing more than four

Honorable James W. Strawn, Page 6

percent (4%) alcohol by weight. Its wet status is not enlarged or added to by reason of the fact that the county is wet in a greater degree than is the precinct, and such status may not be enlarged except by vote of the people of that particular precinct in an election held for that purpose.

In accordance with the above holding you are advised in answer to your first question that it is legal to sell alcoholic beverages containing not more than four percent (4%) by weight in such precinct. In answer to your second question you are advised that the type of license to be issued in such precinct should be "Retail Dealers On-premise License", Article 667-3, Section 4 (b), Vernon's Annotated Penal Code. In answering this last question we are assuming that in your question about the type of license you meant the type of license required for an ordinary retail dealer in such alcoholic beverages.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

Robert F. Cherry
Assistant

APPROVED APR 1, 1942

FIRST ASSISTANT
ATTORNEY GENERAL

RFC:mp